## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

J.H.O.C. d/b/a PREMIER
TRANSPORTATION and SENTRY
SELECT INSURANCE,

    Plaintiffs,

vs.                                       CASE NO. CV-07-J-1216-NE

VOLVO TRUCKS NORTH AMERICA,
INC.,

    Defendant.

### MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 15), memorandum and evidence in support thereof (docs. 16 and 17), to which the plaintiffs filed a response and evidence in opposition (doc. 18) and the defendant thereafter submitted a reply (doc. 24). The court has reviewed all of the pleadings, memoranda and evidence submitted by the parties.

### I. Factual Background

The plaintiffs brought suit in this court based on diversity jurisdiction. Complaint, ¶ 2. Plaintiff J.H.O.C. d/b/a Premier Transportation ("Premier") is a Georgia corporation, plaintiff Sentry Select Insurance[1] is a Wisconsin corporation,

---

[1] Plaintiff Sentry Select Insurance provided insurance coverage to plaintiff Premier for the tractor in question in this litigation. *See* deposition of Timothy Pilato, at 22-24. Plaintiff Sentry has fully compensated plaintiff Premier for the loss of the tractor. Pilato depo. at 23. The plaintiff is not making a claim for loss of use of the trailer. Pilato depo. at 57.

and the defendant is a Delaware corporation with its principal place of business in North Carolina.

The complaint alleges that on August 22, 2006, while a Volvo tractor owned by Premier plaintiff was being driven by one of Premier's drivers to deliver cargo, the tractor engine caught on fire, resulting in a total loss of the tractor, trailer, and all cargo. Complaint, ¶¶ 7-9. The parties agree that this particular tractor was the subject of a February 2006 recall notice by defendant due to a defective condition in the exhaust gas recirculation ("EGR") pipes. The parties do not dispute that the tractor was manufactured by defendant, nor that the fire resulted from the very problem with the EGR system which formed the basis of the recall. *See e.g.* depo. of Heino Scharf at 21-22.[2]

The plaintiff asserts claims for violation of the Alabama Extended Manufacturers Liability Doctrine ("AEMLD") (Count I), breach of implied warranty of merchantability (Count II), breach of implied warranty of fitness for a particular purpose (Count III), negligent and/or wanton failure to warn (Count IV), negligent and/or wanton design defect (Count V), negligent and/or wanton construction, installation and manufacture (Count VI), and negligence and/or wantonness (Count VII). By amended complaint, the plaintiffs added a claim for loss of use/down time damages. First Amended Complaint (doc. 12).

---

[2]Heino Scharf is the director of product assurance for Volvo. Scharf depo. at 11.

The defendant filed a motion for summary judgment alleging that the plaintiff is guilty of contributory negligence and assumption of risk because it issued the safety recall seven months prior to the tractor fire, but Premier failed to have the necessary repairs made. Defendant's memorandum, at 2.

The safety recall sent to Volvo vehicle owners in February 2006 stated in part:

| | |
|---|---|
| SAFETY DEFECT: | The EGR cooler inlet pipes and/or the pipes that connect the EGR valves to the cooler may fail (crack or break). |
| SAFETY RISK: | If a pipe fails and is left untreated, the air cleaner and inner fender may be exposed to hot exhaust gases, which could potentially lead to a fire. |

Defendant exhibit C. The notice further informed owners that the necessary repairs would take approximately thirty minutes, at no cost to the owner. *Id.* An email sent to owners further notified them that the vehicles could be operated until the repairs were made, but if the operator heard an exhaust leak or a noise under the hood, he or she should stop immediately and inspect the pipes. Defendant exhibit B.

Premier is a contract shipping company. Brady depo. at 26-27; Timothy Pilato depo. at 14.[3] According to Richard Brady, Director of Maintenance, maintenance of Premier's vehicles is performed by outside vendors. Brady depo. at 5, 18. All warranty repairs go back to Volvo. *Id*. at 18. Although Premier is headquartered in

---

[3]Timothy Pilato is Executive Vice-President for plaintiff Premier. Pilato depo. at 6.

Atlanta, Georgia, it uses a Volvo dealer in Chattanooga, Tennessee for warranty repairs due to a prior dispute with the Atlanta dealer. *Id*. at 20.

When Premier receives a recall notice, Brady lists every truck involved and distributes it to all of their locations and all managers of each fleet. Brady depo. at 42. He sends that and the recall letter by email to the terminal manager and driver managers for distribution to the fleet. *Id*. at 42-43.

Prior to the February 2006 recall notice, Brady received an email dated January 31, 2006, detailing the recall. Brady depo. at 53-54. He waited until he received the recall notice to notify anyone besides the maintenance people so they would know what to look for during routine maintenance. *Id*. at 66-69. Brady thereafter sent an email instructing the terminal managers to get in touch with their local Volvo dealers and have the necessary work performed. *Id*. at 44. In his opinion, all safety recalls concern work that should be "done ASAP." *Id*. at 47. As Brady understood this recall notice, the vehicles in question had a defective EGR cooler such that a flange could break off, potentially putting hot exhaust on the air cleaner and inner fender, which in turn could cause a fire. *Id*. at 48. Brady notified the terminal managers that this was an urgent issue and informed the drivers and maintenance crews that if they heard a change in engine noise to stop driving immediately. *Id*. at 50-52.

Because black smoke from a cracked flange left residue, a mechanic could see the defect before a problem developed. Brady depo. at 58. Brady instructed drivers to look for smoke residue, but stated this problem would be very hard to see from the

ground. *Id*. at 58-59. However, a driver could see the smoke and hear a detectable change in engine noise. *Id*. at 59-60. Several tractors were identified with the defect and repaired in Atlanta. *Id*. at 60.

The particular tractor in question was based out of Atlanta. Brady depo. at 61. However, because of the ongoing dispute with the Atlanta dealership, the tractors were repaired "on the road.... Go to Chattanooga, get them done. Go to Tifton, get them done. Go to Savannah, get it done." *Id*. at 70-71. Because some of these dealerships were slow in obtaining parts for the repairs, Brady contacted John Coleman at Volvo about getting parts out for the recall work.[4] *Id*. at 77-78. However, Brady has no knowledge and no documentation concerning whether the tractor that is the subject of this suit was not repaired due to a parts shortage. *Id*. at 84. He further stated that the repairs were slow because the drivers would have to wait from one to four hours for the recall work to be performed. *Id*. at 85.

Brady asserts that there was probably a weekly effort to have the necessary repairs made to the tractor in question, but there is no documentation to support his assertion. Brady depo. at 92-93, 103-104. At the time of the fire in this tractor, approximately thirty percent of plaintiff's fleet had not yet been repaired. *Id*. at 95, 136. Due to the delay with repair work from dealers, Premier convinced Volvo to let it perform the rest of the repairs itself. *Id*. at 95. This occurred after the fire, when

---

[4]John Coleman is a regional or district service manager. Brady depo. at 132.

there was a greater effort to have the recall work on all indicated trucks finished. *Id.* at 94-103, 121-122.

Nothing in the recall notice stated that the repairs had to be done immediately or that the tractor should not be operated until the repairs were made. Brady depo. at 133-134. However, the recall instructions did state what to look for in the engine and not to operate the vehicle if the pipe was separated. Scharf depo. at 55.

Premier operates a maximum capacity all of the time so it rarely has equipment that is idle. Pilato depo. at 16-17, 44; Brady depo. at 125.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). In meeting this burden the nonmoving party must demonstrate that there is a "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); Fed.R.Civ.P. 56(c).

"A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AL Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

### III. Legal Analysis

*A. Contributory Negligence/Assumption of Risk*

Under Alabama law, contributory negligence bars recovery if a contributing proximate cause of the accident was the plaintiff's failure to use reasonable care. *See*

*Campbell v. Cutler Hammer, Inc.* 646 So.2d 573 (Ala.1994); *Uniroyal Goodrich Tire Co v. Hall*, 681 So.2d 126 (Ala.1996). Contributory negligence is established if a plaintiff has (1) knowledge of the condition, (2) appreciation of the danger, and (3) fails to exercise reasonable care with such knowledge and appreciation of the danger. *See Wallace v. Alabama Power Co.*, 497 So.2d 450, 457 (Ala.1986). Although the "question of the existence of contributory negligence is normally one for the jury," *Wyser v. Ray Sumlin Constr. Co.*, 680 So.2d 235, 238 (Ala.1996), a court may find contributory negligence as a matter of law. A defendant can show a plaintiff was contributorily negligent as a matter of law by showing that the plaintiff put himself in danger's way and that the plaintiff had a conscious appreciation of the danger at the moment the incident occurred. *Tell v. Terex Corp.*, 962 So.2d 174 (Ala.2007).

The defendant argues that the plaintiff's failure to have the recall work performed for seven months after the recall notice was sent to the plaintiff constitutes contributory negligence as a matter of law. "A plaintiff is contributorily negligent in handling a defective product when he or she fails to use reasonable care with regard to that product." *General Motors Corp. v. Saint*, 646 So.2d 564, 568 (Ala.1994).[5]

---

[5]The Alabama Supreme Court in *Saint* discussed the type of situation in which a defendant would have a viable contributory negligence defense in an AEMLD case. In *Saint*, the plaintiff alleged that her seat belt failed to properly restrain her in an automobile accident that caused injuries to her person. The plaintiff's own expert testified that plaintiff allowed slack to remain in her seat belt. The defendant had warned against allowing slack to develop in the vehicle's owner's manual. The court concluded that the plaintiff failed to use reasonable care in wearing the seat belt and found the defendant was entitled to a jury charge of contributory negligence. *Saint*, 646 So.2d at 568. The court did not address any evidence of the cause of the accident, and, as noted above, stated that accident causation was not a bar to recovery. *Id.* at 565.

The plaintiffs argue that although the defendant alleged Premier failed to perform the indicated inspection and failed to note the change in engine noise as proof of contributory negligence as a matter of law, the defendant has no evidence to support these statement.  Plaintiff's response, at 2-3, 11.  However, the more appropriate inquiry for this court is whether the plaintiff has evidence it did these things, due to the obvious difficulty in obtaining evidence that someone failed to do something.  Assumably, the only evidence of such a negative would be the lack of evidence that it did occur.  As such, the defendant's lack of evidence that the Premier did not take any of the recommended actions is evidence that the same did not occur.[6]

Once the defendant filed its motion for summary judgment with supporting evidence, the burden shifted to the plaintiffs to put forth some evidence that Premier acted reasonably in not having its tractor repaired for months following the recall notice.  Without such evidence, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  *Celotex Corp.,* 477 U.S. at 322-23.

---

[6] The plaintiffs argue that "[t]his Court can personally observe that there are no depositions, affidavits, or any other exhibits cited to by Volvo establishing that Premier or any of its employees failed to perform pre-trip inspections on this tractor, failed to not a change in engine noise ... or continued to operate the tractor after a change in engine noise began." Plaintiffs' brief, at 3.  The court is of the opinion that evidence that Premier did perform pre-trip inspections, or noted no change in engine noise, would be much more compelling.  The lack of evidence that the plaintiffs did not do something is not equivalent to evidence that the plaintiffs did act.  Very few companies document their failure to act.

The same applies to the defendant's argument concerning assumption of risk by Premier. Assumption of the risk is established if the evidence shows that (1) the plaintiff has knowledge of the condition, (2) the plaintiff appreciates the danger or risk posed by that condition, and (3) a voluntary, affirmative exposure to the danger or risk. *Sprouse v. Belcher Oil Co.*, 577 So.2d 443, 444 (Ala.1991).

From Brady's deposition testimony, the defendant established that Brady, on behalf of Premier, knew of the recall and why the recall had been issued, knew of the danger from delaying the recall work, and did not have all of its trucks repaired. Additionally, Premier had provided no evidence that its trucks were all inspected for the relevant defect. Premier has not provided evidence that the driver of the tractor in question did not hear a change in engine noise, or did not see smoke. Premier has not provided evidence that this particular driver knew to look for these things. Premier has not provided evidence that any attempt at all was made to have this particular tractor repaired. Premier had not provided evidence that anyone, employee of Premier or otherwise, ever checked this particular tractor once it was warned that a defect existed.

The plaintiffs argue that defendant's failure to mandate that owners immediately quit driving the vehicles in question until the recall work was performed negates any possible assumption of risk by the plaintiff. Plaintiffs' brief at 14. At best the evidence before the court, in the light most favorable to the plaintiffs, established that the tractors could be safely operated until repairs were made, given

that certain precautions were taken. However, Premier has failed to produce even a scintilla of evidence that it took those very precautions with regard to this particular tractor. Premier has offered no evidence that it attempted to have this particular vehicle repaired but parts were unavailable. Clearly, the plaintiffs have the burden to demonstrate the existence of some evidence in support of their claims. *Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e). The defendant "is not required to negate his opponent's claim. The movant may discharge his burden by merely 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. The non-moving party is then required to "go beyond the pleading" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id*. at 324, 106 S.Ct. 2548. The plaintiffs simply have not done so.

Given the complete failure of the plaintiff to establish it acted as a reasonable entity after receiving notice of the recall, the court is of the opinion that Premier assumed the risk that the tractor could catch fire while being operated until the repairs were made, as a matter of law.

*B. Breach of Warranties (Counts II and III)*

The defendant argues that the express warranty on the tractor disclaimed all warranties, "**EXPRESSED OR IMPLIED, INCLUDING BUT NOT LIMITED TO, IMPLIED WARRANTY OF MARKETABILITY OR FITNESS FOR A**

**PARTICULAR PURPOSE"** (emphasis in original). Defendant exhibit A. The plaintiffs assert that the written warranty upon which the defendant relies failed of its essential purpose and therefore is inapplicable to the disclaimers, limitations and exclusions relief upon by defendant. Plaintiffs' response at 14.

Plaintiffs argue that, because the warranty limited defendant's obligation to repair or replacement of parts which are defective, and in this case the tractor was destroyed, the warranty is worthless. However, the cases on which the plaintiffs rely in support of their argument simply are not applicable to the facts of this case. *Tiger Motor Company v. McMurtry*, 224 So.2d 638 (Ala.1969), dealt with a "lemon" car for which the owner sought recision of the sale due to the 40 or 50 days of repair time the car had already been in the shop. In that case, the plaintiff took the vehicle in question to a dealership to have repairs made. Similarly, *Peterbilt Motors Co. v. Martin*, 521 So.2d 946 (Ala.1988), concerned a defect in a truck known to the dealer and made known to the manufacturer before the tractor was delivered to the plaintiffs. In spite of knowing of the defect, the dealer and the manufacturer did not make necessary repairs, and the dealer actually discounted the plaintiff's complaints. That case was tried to a jury, and the Alabama Supreme Court affirmed the jury verdict, finding, "Given the numerous attempts at repair over the extended time period, the jury could properly conclude ...that the combine was not repaired within a reasonable time and that the limited warranty had failed of its essential purpose." *Peterbilt*, 521

So.2d at 949. Unlike the facts before this court, but similar to the facts in *Tiger Motor*, the plaintiffs in *Peterbilt* actually took the tractor to a dealer to attempt to have repairs made.

The plaintiffs argue that, because the fire left Premier without a repair remedy, the express warranty should not apply. Plaintiffs' argument continues that since the express warranty should not apply, Premier is entitled to the implied warranties found in the Alabama Code. Specifically, Premier seeks to apply the implied warranty of merchantability, which arises in a contract for the sale of goods where the seller is a merchant with respect to the goods he is selling. *See* Ala.Code § 7-2-314 (1997). Additionally, Premier asserts an implied warranty of fitness for a particular purpose arises when the seller, at the time of contracting, has reason to know any particular purpose to which the buyer wishes to put the product, and also knows that the buyer is relying on the seller's expertise in selecting a suitable product for the buyer. *See* Ala.Code § 7-2-315 (1997). Both types of implied warranties may be disclaimed by the seller by including the appropriate language of disclaimer in the contract or agreement. *See* Ala.Code § 7-2-316 (1997); *Moorer v. Hartz Seed Co.,* 120 F.Supp.2d 1283, 1290 (M.D.Ala.2000), citing Ala.Code § 7-2-316(2) and (3) (1997).

The plaintiffs argue that the tractor fire voided the express warranty entered between Premier and Volvo, and therefore these additional, statutory remedies are available. *See* plaintiffs' brief, at 15. The court disagrees. The parties are sophisticated businesses who contracted for remedies available to Premier. Alabama

Code § 7-2-719(a) permits such parties to add to or substitute remedies available to the parties. *Southland Farms v. Ciba-Geigy Corporation*, 575 So.2d 1077, 1079-1080 (Ala.1991). But for Premier's failure to act, the express warranty would not have "failed of its essential purpose."

The defendant further argues that it is not the "seller" of the tractor in question, and hence the implied warranties of fitness for a particular purpose and marketability do not apply to it. Because the court concludes that the parties contracted as to the extent of the warranties, and these were the express warranties stated, the court does not consider whether the defendant is a "seller" of the tractor in question for purposes of whether the implied warranties would apply.

*C. Failure to Warn* (Count IV):

The plaintiffs argue that the defendant failed to warn Premier of the potential defect in the EGR system. The defendant points out that Premier was warned of the defect by the email sent January 31, 2006, and by the recall notice sent in February 2006. Defendant's brief, at 18. Creatively, plaintiffs assert this did not satisfy defendant's duty to warn because the defendant provided no time frame as to when repairs should be made. Clearly, the notice stated that there was a danger of fire and not to drive the vehicle if certain noises or defects were seen or heard.

Plaintiffs further argue that "there has been no evidence that a 'discernible change in engine noise' was observed by Premier or its driver." Plaintiffs' response at 17. As the court has previously noted, the plaintiff has the burden of establishing

14

a genuine issue of material fact for trial.  Plaintiffs' argument that the defendant has not proved that Premier or the driver did hear a change in noise  is simply insufficient to meet this burden.  Rather, a statement under oath from the driver that he did not hear a change in noise prior to the time the tractor caught fire would satisfy plaintiff's burden to show that there remains a genuine issue for trial.

The plaintiff has not alleged from exactly what deficiency the recall notice suffered.  Under Alabama law, a failure-to-warn case cannot be submitted to a jury unless there is evidence that the allegedly inadequate warning would have been read and heeded and would have prevented the accident. *Bishop v. Bombardier, Inc.*,  399 F.Supp.2d 1372, 1385 (M.D.Ga.,2005), citing *Sears, Roebuck & Co. v. Harris*, 630 So.2d 1018, 1030 (Ala.1994); accord *E.R. Squibb & Sons, Inc. v. Cox*, 477 So.2d 963, 971 (Ala.1985).   Here, the evidence is that the defendant provided a safety recall notice which described the problem, stated the danger and gave warning signs of the danger.  The court is of the opinion that the defendant is entitled to judgment in its favor on the plaintiff's failure to warn claim as a matter of law.

*D.  Wantonness (Counts IV, V, VI, VII):*

In addition to the various negligence claims plaintiffs make, they also state these same claims as additionally or alternatively for wanton conduct.  "Wantonness is the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *McDougle v. Shaddrix*, 534 So.2d 228, 231

(Ala.1988) (internal citations omitted); see also Ala.Code § 6-11- 20(b)(3) (defining "wantonness" as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others"). Wantonness does not require an intent to injure another, but may consist of an inadvertent act or failure to act, when the one acting or failing to act has knowledge that another is probably imperiled by the act or the failure to act and the act or failure to act is in reckless disregard of the consequences. *Hamme v. CSX Transp., Inc.*, 621 So.2d 281, 283 (Ala.1993) (citations omitted).

Contributory negligence and assumption of risk are generally not defenses to wanton conduct. *See Chance v. Dallas County, Alabama*, 456 So.2d 295 (1984). Wantonness is generally a jury question unless there is a total lack of evidence from which the jury could reasonably infer wantonness. *Britt v. USA Truck, Inc*., 2007 WL 4554027, 3 (M.D.Ala.2007).

In the facts before this court, there is no evidence of wantonness such that a jury could reasonably infer wantonness. The evidence is that defendant discovered a problem with the EGR pipes, notified owners of the tractors containing that faulty part that there was a problem, notified owners as to how to identify that problem, and notified owners as to how to have the problem repaired at no expense to the vehicle owner. The defendant cannot be found liable for wanton failure to warn (or negligent failure to warn) because it warned Premier and all other effected tractor owners of the defect and the potential risks therefrom. Nothing before this court creates a genuine issue of material fact regarding wanton behavior such that a jury could reasonably

16

return a verdict in plaintiffs' favor on wantonness.  As such, the court is of the opinion that the defendant is entitled to judgment in its favor on this issue as a matter of law.

*E.  Lost Use Damages* (Amended Complaint):

>By Amended Complaint, the plaintiffs seek:
>
>a sum for loss of use/down time of the 2006 Volvo Tractor model VNL64T with VIN #4V4NC9GH46N421491 and the attached trailer which were deemed to be a total loss as a result of the fire caused by the defective condition of the exhaust gas recirculation cooler pipes... in the amount of $48,400....

Amended Complaint, at 2.  However, by deposition, Timothy Pilato testified that the plaintiffs are not making a claim for loss of use of the trailer.  Pilato depo. at 57.  He stated "I didn't even charge you guys for loss of use of a trailer...." *Id.*, at 48. During Richard Brady's deposition, plaintiffs' counsel stated "[w]e're not making claim as to lost use .... We're not making claim a (sic) for lost use of the trailer." Brady depo. at 129.  Therefore, the court has considered plaintiffs' claim for "lost use damages" solely as it relates to the tractor.

The parties dispute whether the plaintiff can recover for lost use damages.  However, the court is of the opinion that the plaintiffs cannot recover any damages for any purpose until they establish some basis under which the defendant is liable for the plaintiffs' losses.  The plaintiffs have failed to establish any basis on which the defendant can be held liable.  The plaintiff sued the defendant for violation of the AEMLD (Count I), breach of implied warranty of merchantability (Count II), breach of implied warranty of fitness for a particular purpose (Count III), negligent and/or

17

wanton failure to warn (Count IV), negligent and/or wanton design defect (Count V), negligent and/or wanton construction, installation and manufacture (Count VI), and negligence and/or wantonness (Count VII). By amended complaint, the plaintiffs added a claim for loss of use/down time damages. First Amended Complaint (doc. 12).

The defendant has provided evidence that the plaintiff assumed the risk of operating the defective tractor and further was contributorily negligent to the complete loss of that tractor. When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir.1997). The plaintiff has failed in its burden to provide evidence, as opposed to argument, the a genuine issue of material fact exists.

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322-23, 106 S.Ct. 2548 (quoting Fed.R.Civ. P. 56(c)).

## IV. Conclusion

The plaintiffs have failed to present any evidence to this court from which a genuine issue of material fact could be discerned. The defendant has presented substantial evidence that Premier was contributorily negligent or assumed the risk of the fire. As such, the defendant is entitled to judgment as a matter of law as there is no genuine issue of material fact left for a jury to decide. Therefore, the Court shall grant the defendant's motion for summary judgment by separate Order.

**DONE** and **ORDERED** this the 2nd day of June, 2008.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE